Good morning, everyone. We have four argued cases today. The first is number 2011-3223, Warren v. Transportation, Mr. Baldwin. Thank you, Your Honor. Good morning, Your Honors, Mr. Gavar, and Mr. Ruiz. I'm Marcus Vogt from Denver, Colorado. I represent the petitioner in this case, Cheryl Diane Warren. Ms. Warren was employed by the... Before you... I think we're familiar with the facts. I probably need to get into those. But I do have some difficulty in understanding what this case is about and what the consequences of your prevailing would be. What are we talking about? Are we talking about a dispute about the amount of retirement benefits, about whether she should have been able to stay on longer as an air traffic controller? What's going on? It's the second of those two. For reasons that are not entirely clear, I mean, there is a letter in the record. I think it's J.A... J.A. 85... J.A. 35, sorry. That was the difficulty. Because Ms. Warren was in the CSRS system and was approaching her 55th birthday, if she were to move into the controller position, she would be subject to the mandatory retirement provisions, which kick in at her 56th birthday. I thought that had been changed before the time that she was hired. Apparently, it has been changed if you are not in the CSRS system. So that's the route. Well, no, I knew it had been changed for first. I thought it would also have been changed with respect to CSRS. No. I mean, that's kind of been a given in the case. No one has really ever understood what the backstory to that was. But again, judging from the letter that FAA sent her, they just refused to move her into that position because she was in CSRS. That's the only reason. So was she seeking that back pay? Well, yes. She would be seeking, basically, placement into that position. My understanding is, Mr. Jabbar may know more, that if she were not in CSRS, she would be eligible to work an additional five years, that is to age 61. So she's still under that age at this point, so she would seek to go back to work. That's really what she seeks. But not back pay. Well, I think there would be a claim for back pay at some point, yes. She's not working there now, right? No, that's right. Well, she had a five-year appointment, so when this controversy arose, she stayed at work at FAA in the lower-graded position, the air traffic assistance position, but the five years expired in the interim while we've been litigating this case, so she left at that point. So she's not employed with the FAA now. Correct. And if she wins this lawsuit, then what do you expect to have happen? Well, again, if she wins, I would expect, and I would hope that the FAA would take her back voluntarily, to be honest, and I think there are some discussions about that, because then she would be eligible. I mean, they had no problem with her performance or her conduct or anything. It was simply the fact that she was in the CSRS. So if she was under FERS, none of this would have occurred. That's right. Now, early on she had the option of going into FERS. That's right. What happened to that? She had extensive discussions back and forth with the personnel people at FAA. For reasons, again, that are not entirely clear, she felt like she got the wrong information from them. You know, they say they gave her the right information, but all I can tell you is that those discussions were focused on the same issue. It wasn't an issue of retirement pay or anything like that. It was how long would I be able to work if I'm in this system or that system. Well, if she could solve the problem by voluntarily going into FERS, why is there a case here? Well, because she missed the window. Well, I understand that, but she did have the opportunity. Why doesn't that foreclose her from complaining about it later on? Well, I mean, if she's ineligible to be placed in CSRS the way we look at it, she's ineligible. She's excluded regardless of the timeline, regardless of the fact that she should have done it better. Now, you're not arguing that she was misled by the government back then? No, we haven't made that argument, and we've kind of stipulated, if you look at the stipulation of facts, we've kind of said whatever those discussions were, they ended up in her not making the election. But the ALJ ruled in a manner that was in her favor, correct? That's right. The ALJ ruled in her favor. He used a different exclusion than the one we were arguing, and the one that the government on either side was arguing at that point, but one that really I think is very much applicable. I mean, I think the ALJ's opinion should be very, very seriously looked at here in terms of the term appointment issue. Can I turn to that for a moment? Sure. It would have been helpful, and this is directed to both sides, to give the background here and tell us what's involved. We shouldn't have to figure that out on our own. No, I understand. What's being relied on now in terms of the term appointment issue by both MSPB and the government is this exclusion from Part 316 that's made by the OPM comments when the Part 316 regulations were put in place. But if you look, and if you look, first of all, By the exclusion, you mean the exclusion from the accepted service. Yes. That Part 316 only covers the competitive service. The term appointment provision of it. Sorry? The term. The term. Yeah, the term. And if you look at 5 CFR Part 316 itself, there's no exclusion for the accepted service. There's no exception for the accepted service. And the comments themselves, what they say is What you're saying is that we ought to interpret the term, term appointment, to refer to term appointment in the accepted service because it has a technical meaning in, I mean, not the accepted service, but the competitive service, and the term appointment has to refer to a position in the competitive service, right? Well, yeah, I guess so. Essentially what I'm trying to say is, and what OPM itself said is, if it's in the accepted service, they said agencies may make time-limited appointments over one year in the accepted service, and these would be, quote, comparable to term appointments. So now we have to look back to the Subsection 14 exclusion, and if we have something that's comparable to a term appointment or in the nature of a term appointment, then is it not a term appointment for purposes of the exclusion? And that's what Judge Misch, the administrative judge, essentially said. He said it before MSDB kind of went down the track of the accepted service, but he actually noted that issue in his opinion. So you're not asking us to put her under Part 316. You're saying we should analogize to Part 316 and come up with the same set of exceptions. That's right. Gee, I didn't understand that that was what you were saying. I thought you were saying that it is within 316 and that we're trying to understand what the term appointment is. No, even if OPM, even if it's excluded from Part 316, it's still in the nature of a term appointment for purposes of the Subsection 14 exclusion. But aren't you asking us to really to review a decision that she made voluntarily? I mean, that's what it comes down to, isn't it? Well, yeah, and by the same token, Judge, I mean, there were options also for her, for example, to resign for a day and be re-employed. There are many ways this could have been solved, not only by her, but by SAA, to be honest with you. The problem is you want us to interpret a regulation to kind of match her or to undo her voluntary selection. That's fair enough, yes. I mean, she's coming back. She made a mistake on the selection, and now she's in this position. As I say, she had a chance back in those six months. SAA had a chance after that to do it, and neither one has done, you know, did what they could have done. So we're here. But if I can touch briefly on the Subsection 13 exclusion, you know, that was the one that was primarily argued. The one thing I wanted to point out about that is you look at Rosique. Obviously, Rosique is very relevant to this case, but it's not controlling, I would submit, because of a number of reasons. First, and the same applies really to all the Filipino U.S. military installation cases. There's Rosique, Navarro, Greoxon, et cetera. In all of those cases, they didn't arise under FERCA, first of all. Second, those employees were not seeking exclusion from CSRS. They were seeking in-groups in the system. Third, they had never contributed to the system, so they were seeking essentially a benefit they didn't earn. And finally, the technical issue is different, too. In Rosique, it was whether a temporary appointment should be considered or, I'm sorry, in this case, Ms. Warren, is whether a temporary appointment should be considered indefinite. In Rosique, it was the Congress, whether an indefinite appointment should be considered temporary. And the reason that was before the court was because, as the court pointed out, Subsection 13 is based on 5 U.S.C. 8347, which permits OPM to exclude employees who are, quote, temporary or intermittent. Now, in this case, in the Warren case here, there's no question that Ms. Warren was temporary. She had a 5-year appointment. The problem is with, so there's no problem that it fits within the statute. The problem is does it fit within the regulation, which has crafted this additional requirement on that the appointment be designated as indefinite. The other curious thing about this is that the older version of the statute talked not about temporary or intermittent employees, but excluding employees of, quote, uncertain duration. So this regulation now has kind of gone back to the older version of the statute, if you will, to have this requirement designated as indefinite. And I would submit what it's really doing is negating the amendment made to the statute, which said temporary or intermittent. Because really, although the Congress has now said, OPM, you can exclude employees who are temporary or intermittent, because by the definitions that are all in the briefs, anyone who's got a time limit of appointment, anyone who's temporary, can't be indefinite. So he's kind of defeated the congressional purpose by crafting this regulation. Okay. I reserve your rebuttal. Thank you. Okay. Thank you. Mr. Jabor, am I pronouncing that correctly? Yes, that's correct, Your Honor. Good morning, and may it please the Court. You don't seem to be arguing that because she had the ability to transfer to FERS, that she could have solved this problem herself, and that therefore she doesn't have a claim. No, we're arguing that she was properly placed into CSRF. I understand that, but you don't seem to be – You're not making the estoppel argument that Judge Dyke is suggesting. No, we're not. Why not? Our argument has been that she was correctly placed, and she had the opportunity to elect. So you agree that if she shouldn't have been in CSRS, that she wins? It would have to be remanded in order to determine the proper retirement placement. But what is it she wins? Let's go back to Judge Dyke's question, which I think is really puzzling me, not the question, but the answer. What is it she wins? And why couldn't you all have settled whatever it is she wins, instead of being up here arguing over the technicalities of what is a term appointment in excluded service? The agency felt that she was properly – the FAA felt that she was properly classified into CSRF offset, and that she was not entitled to change her retirement system. And so they felt as though there was nothing they could do. She had the opportunity to elect, and she didn't. And they can't just undo her voluntary choice. Now, I'd like to return to Judge Dyke – Why not? If it's a voluntary choice, why can't they undo it? I mean, if you're saying she decided to do it and she's stuck with it, then she changes her mind and says, Well, it's not voluntary anymore. I changed my mind. Why can't you change her placement? The regulation states that she's entitled to elect hers within six months. And so it sets forth a scheme by which she's able to select hers. And once that six-month period has passed, the FAA did not believe that she had the opportunity to retract it. The regulation is clear that there's a six-month period, and once that six-month period elapses, then she's bound by the retirement choice that she made. The record suggests the FAA would have been perfectly happy if she was not under CSRS. Is that right? I'm not sure the FAA took up her position. Do they want to have her continue to be employed? I don't know exactly what the FAA's position as to her continued employment was. It looks as though this has gotten mixed up in a lot of technicalities, which really have nothing to do with the real issue as to which retirement. The problem is that which retirement system you were in apparently at the time determined how long you could work. And there's no dispute that she wanted to continue to work, and apparently the agency was at least willing to consider that. And everybody's looking at this technicality saying, well, she failed to elect the right retirement system, which would have enabled her to continue to work. Isn't there some way to settle something like this? I don't know the exact. There's not enough evidence in the records. to know the exact nature of whatever job offer was made to her back in 2009 and what the nature of that job offer was. The FAA felt that under these circumstances, reclassification to first Didn't she offer a job as an air traffic controller? That was a step up from what she had before? That's correct. That was the nature of the job offer, but there's just not ample evidence in the records to know exactly what the nature of it was and why the agency felt that it was not able to reclassify her and what conversations were had about that. But it's possible that the problem arose because she was in the wrong retirement system. No, that does seem to be the case. Yeah, that's clearly what the issue is. It has nothing to do with whether she's getting money or whether she's entitled to retire. The issue is they couldn't keep her on because of some rule that says you have to leave at 55 if you're in CSRS. I do want to clarify, because I know this was a subject of discussion. Judge Dyke is correct. That problem was fixed. So CSRS and FERS are treated the same way for purposes of retirement coverage. That change took effect in 2001, and it only applied to air traffic controllers who were employed by the FAA as of 2001. So Ms. Warren did not fall within that new coverage for CSRS. So there's no policy problem with her getting out of CSRS, getting into FERS for purposes of reemployment. Is that right? Because you all have cleaned that mess up. That's correct. If she were in CSRS as of 2001, she was employed as an air traffic controller, she would be able to continue working past age 56 up to a maximum of 20 years. Now, I should also note, though, that there were exceptions that the FAA could have used for Ms. Warren, and they did not. There was an exception for you could get a waiver up to age 61, and the agency chose not to do that. So I think it's difficult to say on the record before this court what the agency's intentions were and whether they really wanted to accommodate her in this situation because there were ways that it could have been done apart from her transferring to FERS, but the agency did not do that. Does she claim that the agency was obligated to accommodate her? I believe her claim in this case is that she's entitled to correction of her retirement coverage because she is excluded. No, but is she saying that if the corrections were made, that the agency was obligated to keep her on or just that the agency was empowered to keep her on? I believe it's the latter, that the agency was empowered to keep her on. Well, don't we need to know whether the agency would have kept her on if she'd been in the right retirement system? Well, I don't believe we do. I think the narrow issue before this court is whether or not under FERCA she has a claim, whether or not under FERCA she's entitled to correction of her retirement coverage. The consequences of that are up to her. They may or may not be exactly what she's hoping for, and it may or may not be the case that she is able to be employed as an air traffic controller even if she's reclassified under FERS. And we'll know she's not currently employed, so if she did get an offer, it seems like she would be able to make the election anew. So this may not be a wise choice on her part, and it may or may not be. We don't know. I think the narrow issue that's before this court is simply under FERCA, is she entitled to correction of her retirement coverage? And the answer is no.  I think that you should have addressed some of these broader issues in the brief so that we understood what was going on here and didn't have to figure it out for ourselves. Okay. I apologize for not addressing those, but I do want to return to that issue as to whether or not... Let's go back to that issue. I take it that the government's position is not that she comes under... is that she doesn't come under 316, right? That's correct. Because that's limited to... Competitive service. And there's no proper analogy for the accepted service, and whatever category she fell into, CSRS was okay. Is that the sum of your position? Our position is that she was properly placed in the CSRS offset retirement system because her appointment was an accepted service appointment not to exceed a specific time period. And therefore, it doesn't fall under... And it was not indefinite. Your position is it's not indefinite. That's right. This court approved in Rosette the definition of indefinite set forth by OPM or favorably cited that definition. And indefinite means without a specific time limit. And indeed, if you look at... Doesn't the Rosette case tell the court to look at all the evidence in order to determine the appropriate tenure grouping? It says that you look at all the evidence in order to determine the nature of an employee's appointment. And so if the evidence is incomplete as to the nature of an appointment, then you can look at the tenure status code as further evidence. But here, the evidence is complete as to the nature of... Earlier, you said it wasn't complete. You said you weren't aware of the discussions that were held prior to her appointment. No, no, no. I said that the record is not clear as to what sorts of discussions were had about another job offer. The record is very complete as to the nature of her appointment as an air traffic control, as an air traffic assistant in 2007. The job offer, the job was advertised as a temporary not to exceed position in the accepted service. That's what the SF-50 says under the nature of action code. That's what it says in the remarks section. And that's exactly the way the agency treated it. At the end of the five-year period, her appointment ended. It was not an indefinite appointment that lasted for an unlimited period of time. It was a defined five-year end date to it. And so it doesn't fall under that. It doesn't fall under the exclusion for term appointments, not only because it was in the accepted service and not the competitive service, but also because the regulations make clear that a term appointment can only be for a four-year period. And, in fact, the regulations also say if it's going to be longer than four years, you need to seek approval from OPM for a term appointment. Here, there's no evidence that any approval for a term appointment longer than four years was ever sought. So it doesn't fall under that exclusion item. Why do we have all these detailed exclusions from CSRS but not from FERS? What's the theory behind the difference? The theory is that Congress set forth that OPM is supposed to have the authority to exclude from CSRS. That's not answering the question. As a matter of policy, why are there all these exclusions from CSRS but not from FERS? I haven't studied FERS closely enough to know if there are similar exclusions there. There's some, but not as extensive. The overarching similarity behind all the 14 or 15 exclusions that were in the regulations is that they are all some sort of temporary or intermittent appointments. And under 8347G, OPM may exclude any temporary or intermittent appointments from the operation of the civil service retirement system. So these were the 14 or so exclusions that they felt were appropriate from the CSRS system. In Part 316, OPM defines what is a term appointment. But the government's position is 316 doesn't apply to this case. Okay. Assuming we buy that, and the board did, where do we go to find out what a time-limited accepted service appointment is? What we have here is a time-limited accepted service appointment, which she... The question is, is it a term appointment? And your answer is 316 doesn't tell us the answer to that. Who does, or what does? Right. The appropriate thing to look at is the nature of action codes. That's nature of action code 171. And if you turn to page 75 of the joint appendix, you can see exactly what nature of action code 171 corresponds to. And at the top of it, it makes clear it only corresponds to accepted service appointments. And it will set forth the criteria that need to be met for the nature of action code to apply. They're very specific codes. OPM is very specific with its terminology and its circumstances. And so you can see for nature of action codes 108 and 508 on pages 69 and 74 of the appendix, it's very clear that those apply to term appointments NTE. Term appointments NTE. I don't understand. Why would the regulations dealing with the FERS coverage exclude somebody who had a term appointment in the competitive service, but not exclude someone who had what is effectively a term appointment in the accepted service? I'm not sure I would agree that it's a term appointment in the accepted service. What is it? It seems to be, maybe it doesn't fall within that precise terminology, but it's effectively the same thing. If somebody had a four-year appointment in the competitive service, they're excluded from CSRS. But according to you, if they had a four-year appointment in the accepted service, they're not excluded from CSRS. Why? Well, it depends on the specific. A term appointment is a specific term of art, and it's only to be filled for certain specific needs of the agency. I understand that, but you're not answering my question. My question is in drafting this regulation with these exclusions, you're saying, well, we've got to use a very precise definition of term appointment. It only applies to term appointments in the competitive service. Well, it looks like a term appointment in the accepted service is not included. But my question to you is why, in drafting the exclusions from CSRS, would you want to distinguish between those two people, one in the accepted service and one in the competitive service? I'm not sure that there is anything that I can point to, and I'd love to, except that in 5 U.S.C. 8347G, OPM was given the authority to exclude certain categories of – it was given authority to exclude temporary or intermittent employees from the operation of CSRS, and it drafted certain exclusions that it felt would effectuate – You're asking us to give this a very narrow meaning, and you can't give us any reason why it makes sense to give it the narrow meaning. Well, I'm not sure I'm asking you to give it a narrow meaning. OPM is very precise in its terminology, and it uses the word term appointment in a very specific way in all of its manuals and guidance and regulations. And so I think that we should look at the manual, and where a manual says that a term appointment is only governed by nature of action codes 108 and 508, then I think we need to be very specific, because OPM has been very specific in using the same terminology throughout. Mr. Jabour, I suppose you could answer Judge Dyke's question by saying it's based on a false premise. His premise seems to be that OPM's regulations should make logical sense. Your answer is they don't need to make logical sense. They are just regulations. No, I'm not saying that they don't make logical sense. I'm saying that I'm not sure of the exact reasons why OPM chose these specific 14 categories to exclude, but Congress did give OPM the authority to exclude intermittent and temporary employees, and they promulgated certain regulations that they thought would effectuate that statute. And there may be certain policy reasons. I was not able to – these do date back many years, and I wasn't able to locate them. You're assuming they exist. Well, if you go through the categories, you'll see there are employees – I see that I'm over my time. I'll finish answering your question if it works. It is, you can. You'll see that there are various kind of low-wage employees that are excluded, various employees who are only working for very short periods of time. So this was that there are certain categories of employees who OPM felt should not be entitled to participate in the retirement system. So as we state in our brief, and as I've hopefully conveyed today, we don't feel that under FERCA, Ms. Warren is entitled to correction of her retirement coverage, and she was properly placed in the CSRS offset system. Thank you. Well, let me first address the issue, you know, the kind of background issue of the attempts at resolving this. There was an administrative judge on the case before Judge Misch who issued the opinion that's in the record named Judge Kasich from Colorado who made extensive efforts with the parties really to get it resolved. And I can't tell you why FAA decided not to. I mean, all Ms. Warren has ever wanted is to keep working. That was her objective. And just so you understand, both parties… Well, is there a view that they were obligated to keep her on or that if she was in the right retirement system, they would have had the option to keep her on? I'd say the latter, just because they gave her an offer. See, she had worked as a controller before the strike. She came back 25 years later and took a lower-graded job in order to achieve get-back-to-the-controller slot. And she got that, a formal offer from them in 2008, to move into the controller position. And the only thing standing in the way was the CSRS. This issue about the term appointment, you know, Judge Misch, again, discussed this in his opinion and kind of pressured me because, again, at that point, we didn't have the MSPB decision. But he talks at page 10, he says, the appellant's appointment is time-limited but in excess of one year, and the circumstances indicated is a term appointment. He cites the Scott case from MSPB, which was the old one, before they essentially modified or overruled that in this case. As they discussed, the appellant holds a type of appointment, one for a fixed term of more than one year, which OPM has excluded from CSRS coverage, pursuant to its congressionally-granted authority, 5 U.S.C. 8347. It goes back to that statute. And Mr. Giroir went back to that statute. And, again, that statute says, OPM may exclude temporary or intermittent employees. This warrant is for temporary employees. That's undisputable. Coming back to where we were a half an hour ago. Yes. Given her age and the background to this case, in terms of retirement, is she better off in CSRS offset than she would be if she suddenly found herself thrown into FERS or Social Security, which is one of the options that they offer? I asked her that question the other day, and I don't think she knows. And I don't think there's actually that material difference. She only worked for five years, keep in mind, in the 70s. Right. So we're not talking about huge amounts of money in retirement. Okay. All right, thank you. Thank you. I do think that parties might be well-served by trying to resolve this if they could without forcing us to issue a decision. Thank you. The case is submitted.